UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 4:08CR728-DJS |
| ) | |
| MICHAEL KELLY TAYLOR, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter is before the Court on the report and recommendation [Doc. #34] issued by Magistrate Judge Frederick R. Buckles, which recommends that this Court grant defendant Michael Kelly Taylor's motion to suppress evidence [Doc. #19]. The government filed a statement of objections to the report and recommendation [Doc. #37], as allowed by 28 U.S.C. §636(b)(1)(C).

**Procedural History**

Defendant is charged in Count I of the Indictment with being a felon in possession of a firearm. In his motion to suppress, defendant states that he was removed from his home after he was found in the attic and arrested pursuant to an arrest warrant. Defendant argues that the search of the attic subsequent to his removal violated the Fourth Amendment, and seeks an order suppressing and excluding all evidence found during that search.

Following an evidentiary hearing on June 16, 2009, Judge Buckles issued a report and recommendation. He finds that before the contested search, the defendant had been removed from the home,

and was handcuffed and sitting in a police car outside of the residence. He concludes that any concern for officer safety or destruction of evidence had dissipated by the time the searching officer reentered the attic and found the items subsequently seized. Further, he concludes that the exception which allows a search of a vehicle if it is reasonable to believe the vehicle contains evidence of the offense is not applicable under the present circumstances.[1] Pursuant to the Supreme Court's recent holding in Arizona v. Gant, -- U.S. --, 129 S.Ct. 1710 (2009), the magistrate judge recommends that defendant's motion to suppress evidence be granted.

**Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1)(C), a court shall make a de novo determination of those portions of the report, findings, and recommendations to which a party has objected. A court may accept, reject, or modify, in whole or in part, a magistrate judge's findings or recommendations. A court may also receive further evidence or remand the matter to the magistrate judge with instructions.

**Statement of Facts**

---

[1] The magistrate judge also found that there is nothing in the record which would indicate that Officer Neal had reason to believe that any evidence relating to the offenses for which the defendant was being arrested could be found in the attic area.

2

The report and recommendation in this case provides a detailed account of the relevant events surrounding the arrest of defendant and the subsequent search of the house. The government does not object to the recitation of facts contained in the report and recommendation. Accordingly, the Court adopts the factual findings in their entirety.

In the morning hours of January 8, 2008, several officers assigned to a fugitive task force went to 10064 Stimson in St. Louis County to attempt to arrest defendant for several outstanding arrest warrants. The warrants were for the offenses of Unlawful Use of a Weapon and Tampering with a Witness. The officers knocked and announced their presence several times and were met with no answer. The officers then called for the assistance of other officers. Several other officers arrived, including Officer Michael Neal. The officers continued to knock and announce their purpose and to ask for admittance to the residence, again to no avail. The officers then broke open a door and entered the residence. They searched the first floor living area but were not able to locate anyone. In the course of searching they noticed a set of stairs leading up to an attic area. Detective Gary Kroeger climbed the stairs, followed by Officer Neal. Once in the attic Detective Kroeger, with the aid of a flashlight, was able to locate defendant, who was laying down on the attic floor between two rafters. He was partially covered by a plastic sheet. He was holding a cellular telephone in his hand. Detective Kroger several

times told defendant to drop the telephone and to come back to where the officers were standing. Eventually, defendant complied. The officers were able to see that there was no one else in the attic. Defendant was removed from the residence, placed in handcuffs, and put in a police vehicle. Detective Kroger and another officer remained with defendant.

Officer Neal then reentered the residence to do a "secondary sweep of the area where [defendant] was last seen at." He did so to look for "contraband, weapons, knives." Doc. #34, p. 4. He was not concerned that any other person might be concealed in the attic area. Officer Neal then went back into the attic area. Using his flashlight he noticed a firearm partially covered by a handkerchief. Officer Neal then informed the other officers of his discovery. An evidence technician officer was then called to the scene to photograph and seize the evidence. The firearm and cellular telephone were photographed and seized.

The government wishes to emphasis the following facts. Officer Neal brought defendant down from the attic, arrested him, secured him in the police vehicle, and <u>immediately</u> returned to the attic area to search for weapons. Office Neal searched only the area of the attic that had been in defendant's immediate custody and control. Office Neal found the weapon partially concealed beneath a handkerchief, in an area within easy reach of where defendant had been apprehended.

4

**Discussion**

The government makes three arguments in their objection to the report and recommendation. First, the government argues that the Supreme Court's <u>Gant</u> decision addressed only vehicle searches, and therefore it did not overrule Eighth Circuit case law approving wingspan searches incident to arrests that occur in residences. Second, the government argues that even if <u>Gant</u> applies to residential searches, in this case there was ample reason to believe that evidence relevant to the crime of arrest would be found within the defendant's reach, and that such a search exception is applicable in this case. Finally, the government argues that even if the search is now to be deemed unlawful under <u>Gant</u>, Agent Neal acted in good faith in relying on then-valid Eighth Circuit law, which, at the time of the search, unambiguously approved the exact kind of search that Agent Neal conducted.

In <u>Gant</u>, the Supreme Court revisited its decision in <u>New York v. Belton</u>, 453 U.S. 454 (1981), which allowed the search incident to arrest exception to permit a search of the passenger compartment of a vehicle and containers therein if a lawful arrest was made of the occupant of the vehicle. In <u>Gant</u>, police officers stopped the defendant's vehicle because he had an outstanding warrant for driving with a suspended license. After the defendant was handcuffed and locked in the back of a patrol car, police officers searched his car and discovered cocaine in the pocket of

a jacket. Ultimately, the Supreme Court suppressed the evidence found during that search because the defendant was handcuffed and secured in separate patrol cars before the search of his vehicle, and no evidence of the offense of arrest of driving with a suspended license could possibly have been obtained by a search of his vehicle. Gant, 129 S.Ct. at 1714 ("We hold that Belton does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle.").

With regard to the government's argument that Gant should not be extended beyond the automobile context, the Court notes that the Gant decision itself does not indicate that it is strictly limited to the automobile context. Rather, the Supreme Court merely states that it rejects the broad reading of Belton that would authorize a vehicle search incident to every recent occupant's arrest. Gant, 129 S.Ct. at 1719 ("[W]e reject this reading of Belton and hold that the Chimel [v. California, 395 U.S. 752 (1969)] rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search."). Many cases outside of the automobile context rely on Belton to uphold a search incident to an arrest, and it stands to reason that those decisions are subject to reexamination in light of Gant. Indeed, it is worth noting that at least one of the nonautomobile cases relied upon by the government cites Belton

6

to uphold a search of a home incident to an arrest.  See <u>United States v. Palumbo</u>, 735 F.2d 1095, 1097 (8th Cir. 1984).  Further, the cases cited by the government offer distinguishable sets of facts to the case now before this Court.  See <u>United States v. Miller</u>, 946 F.2d 1344, 1345 (8th Cir. 1991) (discussing search incident to arrest in a case where the officer pulled opened a nightstand and found a blue steel revolver while holding the defendant against a wall); <u>Palumbo</u>, 735 F.2d at 1097 (discussing search incident to arrest in a case where the officer testified that the defendant was not handcuffed when the officers searched the area behind a drawer within an arm's reach from where defendant sat).  Finally, other courts have extended <u>Gant</u> beyond the automobile context.  See, e.g., <u>United States v. Perdoma</u>, 2009 WL 1490595, at *2 (D. Neb. May 22, 2009) ("In light of the <u>Gant</u> decision, the court must conclude that the magistrate judge's reliance on the 'search incident to arrest' exception to the warrant requirement to justify the search of the defendant's bag is erroneous and contrary to law.").  The Court is not persuaded that <u>Gant</u> should be limited to the automobile context.

Second, the government contends that even if <u>Gant</u> applies to residential searches, in this case there was ample reason to believe that evidence relevant to the crime of arrest would be found within the defendant's reach.  In essence, the government argues that <u>Gant</u> cannot be read two different ways, that is, extending beyond the automobile context with regard to searches

7

incident to arrest, but limited to automobiles for the search exception allowing searches if there is reason to believe a vehicle contains evidence of the offense of the arrest.

The magistrate judge correctly noted the portion of the <u>Gant</u> decision that stated that a search of a vehicle is authorized if it is "reasonable to believe that the vehicle contains evidence of the offense" arises out of "circumstances unique to the vehicle context." Doc. #34, p. 10 (quoting <u>Gant</u>, 129 S.Ct. at 1719); <u>see also</u> <u>Gant</u>, 129 S.C.t at 1719 ("[W]e also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." (quotation omitted)). Further, the Court notes the Supreme Court in <u>Gant</u> did not place such a restriction on searches incident to an arrest. <u>Gant</u>, 129 S.Ct. at 1716 ("The [search incident to an arrest] exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations."). Specifically, the Court notes when the Supreme Court in <u>Gant</u> discusses circumstances that justify searches incident to an arrest, it generally refers to "arrests." However, when the Supreme Court in <u>Gant</u> discusses circumstances that justify searches based on evidence relevant to the crime of arrest that might be found in the vehicle, it specifically refers to "circumstances unique to the vehicle context." Accordingly, the Court finds that

8

the exception that allows an officer to search for evidence of the offense is not applicable in the present case.

Finally, the government argues that even if the search is now to be deemed unlawful under Gant, Agent Neal acted in good faith in relying on then-valid Eighth Circuit law, which, at the time of the search, unambiguously approved the exact kind of search that Agent Neal conducted.

The Court is not persuaded that the type of search Agent Neal conducted was unambiguously approved by Eighth Circuit case law. Indeed, as noted above, the government cites cases that have distinguishable facts to the present case, including facts relating to the proximity of the defendant to the area searched and the security of the defendant. Further, the Supreme Court's Gant decision is clear: courts are not to take a broad reading of Belton, because the rationale that authorizes police to search a vehicle incident to a recent occupant's arrest applies "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Gant, 129 S.Ct. at 1719.

For the above states reason, the Court finds that the report and recommendation should be adopted and approved, and that defendant's motion to suppress should be granted. Accordingly,

**IT IS HEREBY ORDERED** that the government's objection to the report and recommendation [Doc. #37] is hereby overruled.

**IT IS FURTHER ORDERED** that the report and recommendation [Doc. #34] is accepted and adopted.

**IT IS FURTHER ORDERED** that defendant Michael Kelly Taylor's motion to suppress evidence [Doc. #19] is granted.

Dated this ___2nd___ day of September, 2009.

                                                  /s/Donald J. Stohr  
                                                UNITED STATES DISTRICT JUDGE